**quinn emanuel** trial lawyers

555 Twin Dolphin Dr., 5th Floor, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100

Kevin Johnson, kevinjohnson@quinnemanuel.com

<u>Via ECF</u>                                                                                                                         July 15, 2025
Honorable John G. Koeltl
Daniel Patrick Moynihan, United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Bprotocol Foundation et al. v. Universal Navigation Inc. et al.*, C.A. No. 1:25-cv-4214-JGK

Dear Judge Koeltl:

Plaintiffs Bprotocol Foundation and LocalCoin Ltd. write regarding the Court's Order scheduling a pre-motion conference (Dkt. 28). Plaintiffs intend to oppose Defendants' motion to dismiss as meritless. In the interest of judicial economy and efficiency, Plaintiffs submit this consolidated response to Defendants' two letters (Dkt. 26, 27). Plaintiffs also write to convey the parties' agreed proposed briefing schedule, should the Court order briefing.

At issue in this case is Plaintiffs' patented invention, which structures a decentralized exchange platform using smart contracts[1] in a manner that allows the platform to exchange one crypto asset for another while enabling continuous liquidity, instant conversions among crypto assets, and price discovery without the need for a centralized exchange or individual market maker. Dkt. 1, ¶ 37. Unlike conventional market makers—which perform price discovery based on transactions with willing buyers and sellers—the invention implements an algorithmic, code-based price determination mechanism that automatically and continuously updates after each transaction based on a stored reserve of tokens. *Id.* This technology was at the core of the first fully decentralized exchange, an implementation now known as a "constant product automatic market maker" ("CPAMM"). It is also used by Defendant Uniswap Labs in the accused Uniswap Protocol, and Defendants have encouraged infringing use of the accused Protocol by others.

In opposition to Defendants' motion, Plaintiffs intend to demonstrate that their Complaint sets forth factual allegations that preclude dismissal on the pleadings. Defendants' arguments either ignore these allegations or dispute them, which is fatal on a motion to dismiss. Defendants' cited authority does not suggest otherwise.

    **A. Defendants' Argument Under *Alice* Fails**

Courts reserve pleading-stage rulings on patent eligibility under 35 U.S.C. § 101 for patents facially directed to an abstract idea using a conventional implementation that offers no inventive step. Each of the cases Plaintiffs cite in seeking an early § 101 ruling, Dkt. 26 at 1, Dkt. 27 at 1, fall into this category. *See, e.g. Rady v. Bos. Consulting Grp., Inc.*, No. 2022-2218, 2024 WL

---

[1] A "smart contract" is automatically executing software for processing transactions on the blockchain. Dkt. 1, ¶ 24.

1298742, at *3 (Fed. Cir. Mar. 27, 2024) (claims directed to merely identifying and recording "a physical item's . . . imperfections" are "impermissibly abstract," and lack any inventive concept).

Here, however, the Complaint contains factual allegations, supported by the patent specifications, that describe the inventive concepts in the asserted claims and preclude dismissal. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018) ("[P]atentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)."). For example, the Complaint alleges the asserted claims recite a "technological solution to the challenge of creating a decentralized exchange" and "improve[] blockchain technology" itself by, *inter alia*, "reduc[ing] the computer resources" needed for transactions and "provid[ing] a robust system" that does not have a "single point of failure." (Compl. ¶¶ 49-50, citing '049 patent, 2:13-28, 6:22-25, 13:42-51, 22:29-40). The patent specification further discloses that the asserted claims solve a technological problem for which "the required technology . . . was not available, until recently." '049 patent, 14:6-19. The fact that the claims "contain[] several alleged inventive concepts which the specification touts as specific improvements" and the "complaint plausibly alleges these inventive concepts" is sufficient to "defeat[] [Plaintiffs'] Rule 12(b)(6) motion." *Cooperative Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131 (Fed. Cir. 2022).

Defendants ignore these dispositive allegations and disclosures in their discussion of *Alice* Step One by dismissively and incorrectly characterizing the claimed inventions as "calculating currency exchange rates (i.e., pricing currencies) to perform transactions" and "mathematical algorithms." Dkt. 26 at 1-2; Dkt. 27 at 1-2. The Complaint expressly alleges that the asserted claims are directed to a "technological solution to the challenge of creating a decentralized exchange" (Compl. ¶ 49) and not merely a method for pricing currency or a mathematical algorithm. For example, the Complaint alleges that the asserted claims are directed to "the implementation of a CPAMM using smart contracts," a specific software implementation that "improves blockchain technology for decentralized exchanges." Compl. ¶¶ 49-50. Such claims, which are "limited to a specific process . . . using particular information and techniques" are patent eligible. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016).

The fact that the claimed technological improvement is provided in the context of decentralized finance does not warrant a contrary outcome. The Federal Circuit has never held that claims directed to "economic transactions" are *per se* ineligible, as Defendants suggest. To the contrary, such claims have been held to be eligible where no "pre-electronic trading analog" existed and they resolved "a specifically identified problem in the prior state of the art," as is the case here. *Trading Techs. Int'l v. CQG*, 675 Fed. Appx. 1001, 1004 (Fed. Cir. 2017) (electronic stock trading claims that "resolve[] a specifically identified problem in the prior state of the art" are eligible under § 101); *see also Nasdaq, Inc. v. IEX Grp., Inc.*, No. 18-3014, 2019 WL 102408, at *6-7 (D.N.J. Jan. 4, 2019) (claims directed to improved data dissemination for electronic trading of financial instruments were patent eligible). Nor is a claim rendered patent ineligible "simply because it uses a mathematical formula." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981). Like the claims in *Diehr*, the asserted claims use a formula as part of a larger system, including by using software-implemented smart contracts to implement a CPAMM that "continuously recalculates the price of an LP token" to execute and record transactions. Compl. ¶¶ 5, 39; *see also Diehr*, 450 U.S. at 187 (claims "do not seek to patent a mathematical formula" because they use the formula to "constantly recalculat[e] the appropriate cure time").

2

Defendants' arguments as to *Alice* Step Two similarly contradict the allegations in the Complaint and the disclosures in the patent specification, which necessarily dooms their motion. The Complaint expressly alleges that the CPAMMs recited in the asserted claims enable "a new model for price discovery" that provides "'a radically different ecosystem' from '[t]raditional exchanges.'" Compl. ¶ 51 (quoting '049 patent, 13:57-67). The claimed CPAMM structures also implement an "unconventional solution" to problems in implementing decentralized exchanges that provides "a radically more efficient model." *Id.* (quoting '049 patent, 14:8-26, 14:60-63). Defendants' argument that the asserted claims "merely recite implementing and automating an abstract idea by using existing computers" (Dkt. 26 at 2) cannot be credited considering the allegations in the Complaint. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317-18 (Fed. Cir. 2019) (holding that district court erred by failing to credit "allegations about why aspects of [plaintiff's] claimed inventions were not conventional").

None of Defendants' cited cases evaluating *Alice* Step Two involved claims with similarly alleged inventive concepts. *See* Dkt. 26 at 2; Dkt. 27 at 2-3.

### B. Defendants' Direct Infringement Arguments Are Legally Erroneous

On direct infringement, Defendants first attack the Complaint for not specifically alleging where in the Uniswap Protocol code the reserve ratio value of "1" appears, or how the value is computed (including where in the calculation a market cap is used). Dkt. 26 at 3; Dkt. 27 at 3. But the asserted claims do not require ***computing*** the reserve ratio constant—indeed, the reserve ratio constant may be a "predefined" value. '049 patent, claim 1. Further, Defendants' suggestion that the Complaint must allege where each element of a claim is found is legally erroneous, as recognized by the authority to which Defendants themselves point. Dkt. 26 at 3; Dkt. 27 at 3. To the contrary, "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. Of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). The Complaint need only place Defendants "on notice of what activity . . . is being accused of infringement." *Id.* (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). The Complaint does exactly that: it alleges that the Uniswap Protocol and Interface infringe based on their specific implementations of adding and removing liquidity and swapping assets. Compl. ¶¶ 73, 90. The Complaint then alleges how the smart contracts implemented in the Uniswap Protocol are configured to add liquidity as recited in the asserted claims, including citations to source code that implements the accused functionality. Compl. ¶¶ 75, 92.

Defendants then manufacture a purported inconsistency by mischaracterizing and misquoting the Complaint, asserting that it "contradict[s] the claims' requirement of: $T_p = T_r / T_t * R_r$." Dkt. 26 at 3; Dkt. 27 at 3. In fact, however, the passage Plaintiffs quote describes how the Uniswap Protocol computes the ***amount*** of a token; the Complaint then alleges that this amount "corresponds to a ***price*** per LP token of $T_r / T_t * R_r$," *i.e.*, precisely the equation recited in claim 1 of the '049 patent. Compl. ¶ 75 (emphasis added). And Claim 1 of the '291 patent does not even recite that equation—it only requires determining an amount of a token ***based on*** $T_r$, $T_t$, and $R_r$. '291 patent, claim 1. Nothing in the allegations contradicts the claims.

### C. Defendants' Indirect, Induced, And Willful Infringement Arguments Are Legally Erroneous

At the "most nascent" pleading stage of a case, courts review allegations of induced infringement "for plausibility, not probability." *Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, 104 F.4th 1370, 1377 (Fed. Cir. 2024). Courts also "review the allegations of inducement as a whole, not piecemeal." *Id.* The "mere sale of the allegedly infringing product is enough to plead the defendants' intent to induce their end-users' infringement." *Crypto Rsch., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 687 (E.D.N.Y. 2017). Here, the Complaint alleges how the Uniswap Protocol directly infringes, alleges that Defendants had at least post-filing knowledge of the patents, and identifies specific third parties that Defendants encouraged to use the Uniswap Protocol (and who would thus be direct infringers). *See, e.g.*, Compl. ¶¶ 63-65. Such allegations are more than sufficient at the pleading stage for alleging indirect and induced infringement.

Finally, Defendants' arguments that Plaintiffs' willful infringement allegations are insufficient are predicated on disanalogous precedent. Defendants rely on cases where plaintiffs pled willfulness only for a period preceding the filing of the complaint. Dkt 26 at 3, Dkt. 27 at 3. But this Court has held that "[a]s a general matter, the filing of a federal complaint identifying the patents-in-suit satisfies the requirement that a plaintiff plead a defendant's knowledge of the patents-in-suit." *Richardson v. Adobe, Inc.*, No. 22-7114, 2024 WL 4135347, at *12 (S.D.N.Y. Sept. 10, 2024) (internal quotation marks omitted); *see also Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 408 (S.D.N.Y. 2007) (based on the complaint, defendant "knew of [plaintiff's] patent at least at the time this lawsuit was filed"). Plaintiffs have done exactly this (*see, e.g.*, Compl. ¶¶ 95-96, 100), and as such their willful infringement claims are sufficient at the pleading stage.

### Briefing Schedule

Plaintiffs have conferred with Defendants regarding the timing of the pre-motion conference and a briefing schedule. To accommodate the schedule of Uniswap Labs' counsel, Plaintiffs have agreed not to oppose Defendants' request to move the pre-motion conference to the week of July 28. The parties have also agreed, to the extent the Court orders briefing and subject to leave of this Court, to the following proposed briefing schedule and word limits: Defendants will file a consolidated motion and opening brief of 9,800 words or less by August 13, 2025; Plaintiffs will file a consolidated opposition of 9,800 words or less by September 10, 2025; and Defendants will file a consolidated reply of 3,920 words or less by September 24, 2025. Plaintiffs look forward to meeting with Your Honor at the pre-motion conference and to a prompt resolution of Defendants' motion to dismiss.

Respectfully submitted,

/s/ *Kevin P.B. Johnson*

Kevin P.B. Johnson
Quinn Emanuel Urquhart & Sullivan, LLP

cc: Counsel of record (via ECF)